IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CR. NO. 07-521 (ADC/BJM) |
| ) | |
| SIMEON DE LA CRUZ-PAREDES, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

This case involves the role of the defendant Simeon de la Cruz-Paredes ("de la Cruz") in the attempted smuggling of at least twenty-three aliens into the United States. A grand jury issued a superseding indictment charging a single count of aiding and abetting in the smuggling of aliens, resulting in the death of three aliens, in violation of 8 U.S.C. § 1324(a)(1). (Docket No. 58). De la Cruz moved to dismiss the indictment (Docket No. 139), and the government opposed. (Docket No. 141).[1] This motion and all associated motions were referred to me by the presiding district judge for a report and recommendation. (Docket No. 142). For the reasons that follow, I recommend that the defendant's motion to dismiss the superseding indictment be denied.

**FACTUAL AND PROCEDURAL BACKGROUND**

The relevant facts, except as otherwise noted, are not disputed and are set forth in a declaration executed by Immigration and Customs Enforcement ("ICE") Special Agent Pedro Ruiz. (Docket No. 1-2). On October 8, 2007, a yawl traveling from the Dominican Republic landed in the Manatí coastal area near Barrio Esperanza, Puerto Rico. (Docket No. 1-2, ¶ 4). While the exact

---

[1] Neither party has requested a hearing on the motion.

details of the voyage are unclear, passenger testimony reveals that the yawl was hit by a wave, prompting the passengers to abandon the ship. (Id., ¶ 7). Three aliens drowned (Id., ¶ 7), and nineteen were detained by U.S. Border Patrol officers. (Id., ¶ 5).

The government alleges the yawl was captained by de la Cruz, and that de la Cruz is a well-known alien smuggler who goes by the alias "El Rubio." (Id., ¶ 8). However, the identity of de la Cruz as captain of the yawl and as "El Rubio" is highly contested. (Docket No. 139). The government bases its allegations as to de la Cruz's identity on the analysis of U.S. Border Patrol Intelligence ("BPI") Analyst Antonio Solis. (Docket No. 1-2, ¶ 8). According to the affidavit, Solis concluded that de la Cruz is "El Rubio" based on information obtained from an intelligence report database created from various state and federal agencies and compiled by the U.S. Border Patrol. (Id.). Additionally, the government alleges that three of the nineteen detained aliens identified de la Cruz as "El Rubio" and as the yawl captain in an array of eight photos. (Id., ¶ 9).

De la Cruz moves to dismiss the indictment on constitutional grounds. (Docket No. 139). Specifically, de la Cruz claims the government violated his Sixth Amendment right "to have compulsory process for obtaining witnesses in his favor" ("Compulsory Process right"). (Docket No. 139 (citing U.S. Const. amend. VI.)). In particular, de la Cruz argues that the government deported to the Dominican Republic a material witness who allegedly could have provided exculpatory testimony. (Id.). De la Cruz claims that Wanda Lissette Sánchez-Rodríguez ("Sánchez"), a passenger on the yawl, would testify that she paid "El Rubio" for the voyage, but that she did not see "El Rubio" on the yawl, and thus de la Cruz could not be "El Rubio". (Id., ¶ 6).

The government concedes that Sánchez was detained on October 8, 2007, and deported on

**United States v. Simeon de la Cruz-Paredes, et al.**   Page 3
**Cr. No. 07-521 (ADC/BJM)**
**REPORT AND RECOMMENDATION**

October 11, 2007. (Docket No. 141). However, according to the government, Sánchez was seventeen years old at the time, and thus correctly classified as a "minor" pursuant to the Flores Stipulated Settlement Agreement (the "Flores Agreement").[2] (Docket Nos. 141, 141-2). The government claims that Sánchez was properly questioned according to Form I-770[3] and deported at her own request. (Docket Nos. 141, 141-4, 141-5). Moreover, the government has provided a log from an interview with Sánchez during which she reportedly stated that she did not see El Rubio when she came over but that she was in the front of the vessel and, feeling dizzy and seasick on the boat, she did not see the person who drove it or who assisted the captains. (Docket No. 163-3).

De la Cruz argues, in turn, that the government used Sánchez's minority as a pretext for her deportation. (Docket No. 139, ¶ 7). De la Cruz claims that the government (1) failed to adequately investigate the extent of Sánchez's knowledge of "El Rubio," and (2) denied de la Cruz the opportunity to do the same, thus violating his Compulsory Process right. (Docket No. 139, ¶ 7).

## DISCUSSION

**I. Legal Standard on a Motion to Dismiss**

Rule 12 of the Federal Rules of Criminal Procedure provides that a defendant may raise any motion to dismiss prior to trial. Fed. R. Crim. P. 12(b). On a motion to dismiss an indictment, factual allegations in the indictment are taken as true. United States v. Bohai Trading Co., 45 F.3d

---

[2] The Flores Agreement deals with the detention, treatment, and release of juvenile illegal aliens and defines the term "minor" for purposes of the Agreement's provisions. Settlement Agmt., Reno v. Flores, No. CV-85-4544-RJK (C.D. Cal. Jan. 17, 1997), http://www.aclu.org/pdfs/immigrants/ flores _v_meese_agreement.pdf.

[3] Form I-770 is an advisory read to juvenile aliens upon being detained which sets forth the juvenile's rights. Among those rights are the right to decline a telephone call and the right to request voluntary deportation to his or her home country without a hearing.

577, 578 n.1 (1st Cir. 1995); Boyce Motor Lines v. United States, 342 U.S. 337, 343 n.16 (1952). An indictment may be dismissed on a showing that the government deprived the defendant of his Compulsory Process right. United States v. Green, No. 07-3517-cr, 2008 U.S. App. LEXIS 18678, at *4 (2d Cir. Aug. 27, 2008) (citing United States v. Valenzuela, 458 U.S. 858, 873 (1982)).

## II. Analysis

The Sixth Amendment guarantees any person charged with a crime the right "to have compulsory process for obtaining witnesses in his favor." U.S. Const. amend VI. In other words, the accused has a right to secure the testimony of witnesses which may aid in his defense. See Valenzuela, 458 U.S. at 867. Where a defendant alleges the government violated his Compulsory Process right, the defendant bears the burden of showing that the evidence lost would be both material and favorable to the defense. Id. at 872-873. As the Supreme Court explained, "[t]he mere fact that the Government deports such witnesses is not sufficient to establish a violation of the Compulsory Process Clause . . . . A violation of [the Sixth Amendment] requires some showing that the evidence lost would be both material and favorable to the defense." Id. The defendant bears the burden of demonstrating materiality, or in other words, "that the presence of the witness is necessary to an adequate defense." Id. at 867 (internal quotation marks omitted).

De la Cruz moved to dismiss the indictment on the theory that but for the government's deportation of Sánchez, he would be able to show that he is not the yawl captain "El Rubio." (Docket No. 139). In Valenzuela, the Supreme Court addressed the issue of deporting aliens who may provide exculpatory testimony. 458 U.S. 858. Valenzuela involved a defendant indicted on charges of transporting five illegal aliens within the United States. Id. at 862. On appeal, the Ninth

Circuit held that the indictment should be dismissed because two eyewitnesses to the crime had been deported, and the Supreme Court reversed, reinstating the defendant's indictment. Id. at 874. The Court held that for an indictment to be dismissed on the ground that an alien witness was deported before being interviewed by the defendant, the defendant must provide a plausible explanation as to how the testimony from the deported witness would be (1) favorable to him and (2) material. Id. at 873. The Court determined that the defendant in Valenzuela made no effort to explain what material, favorable evidence the deported aliens would have provided for his defense. Id. at 874. Accordingly, de la Cruz's claim will be evaluated based on these two criteria to determine whether the government violated his Compulsory Process right by deporting Sánchez.

### A. Favorableness of Sánchez's Testimony

The Constitution guarantees a defendant "compulsory process for obtaining witnesses *in his favor*." U.S. Const. amend. VI (emphasis added). Thus, there can be no Sixth Amendment violation without some "plausible explanation of the assistance [the defendant] would have received from the testimony of the deported witness." Valenzuela, 458 U.S. at 871. Here, de la Cruz claims that Sánchez could provide favorable evidence regarding the identity of "El Rubio." (Docket No. 139, ¶ 6). Specifically, de la Cruz alleges that "[Sánchez] would have been in a position to provide testimony favorable to the defendant inasmuch as she did not see the person she knew as 'El Rubio,' to whom she paid for the trip, aboard the boat in which she came to the island." (Id.)

The government argues that the absent testimony is "hardly exculpatory in nature" and thus fails to satisfy the favorable criterion. (Docket No. 141). In its argument, the government persuasively points out that Sánchez's failure to see "El Rubio" on board the yawl does not

**United States v. Simeon de la Cruz-Paredes, et al.**                                            Page 6
**Cr. No. 07-521 (ADC/BJM)**
<u>**REPORT AND RECOMMENDATION**</u>

substantiate the conclusion that "El Rubio" was not on board the yawl or that de la Cruz is not "El Rubio." (<u>Id.</u>). The court agrees that it is a logical leap for the defense to infer that just because Sánchez did not see "El Rubio" on board the yawl, and de la Cruz was on board, that de la Cruz is not "El Rubio," especially since Sánchez admitted that she did not see everyone on board. In her debriefing, Sánchez admitted that she did not see who was driving the yawl or who was helping the captains because she was sitting in the front of the yawl and was "dizzy" during the trip. (Docket No. 163-3). Therefore, the mere fact that Sánchez did not see "El Rubio" on board the yawl fails to demonstrate that Sánchez's testimony would have been favorable in proving that de la Cruz is not in fact "El Rubio."

De la Cruz further contends that had Sánchez been given the opportunity to view a photograph of the defendant, she would have concluded that de la Cruz was not "El Rubio" since she is alleged to have previously been in "direct contact" with "El Rubio." (Docket No. 139, ¶ 5). However, the court need not address this contention since the photographic lineup was not available before Sánchez was deported. (Docket No. 141, pages 6-7). It is well-settled government policy to apprehend aliens at or near the border and deport them promptly. <u>See Valenzuela</u>, 458 U.S. 858, 864 (discussing the justification for examining aliens "without unnecessary delay" and "deporting them promptly") (internal quotation marks omitted). Therefore, by questioning Sánchez prior to deporting her (Docket No. 141), the government satisfied its obligation to determine whether Sánchez possessed "[any] material evidence relevant to a criminal trial." <u>Id.</u> at 865. Based on her testimony that she did not see "El Rubio" and was "dizzy" during the voyage, the government reasonably determined Sánchez possessed no material evidence. (Docket No. 141). Moreover, de la Cruz failed

**United States v. Simeon de la Cruz-Paredes, et al.**                                                        Page 7
**Cr. No. 07-521 (ADC/BJM)**
<u>REPORT AND RECOMMENDATION</u>

to make a showing that the government suppressed the photos in bad faith or delayed disclosing them to the defense until after Sánchez was deported.

### B. Materiality of Sánchez's Testimony

A defendant may not be deprived of his Compulsory Process right when absent testimony may be "relevant and material, and . . . vital to the defense." <u>Washington v. Texas</u>, 388 U.S. 14, 23 (1967), *quoted in* <u>Valenzuela</u>, 458 U.S. at 867. Materiality generally requires "a reasonable likelihood" that the testimony, evaluated in the context of the entire record, "could have affected the judgment of the trier of fact." <u>Valenzuela</u>, 458 U.S. at 873-874. "Implicit in the requirement of materiality is a concern that the suppressed evidence might affect the outcome at trial." <u>Id.</u>, 458 U.S. at 868 (citing <u>United States v. Agurs</u>, 427 U.S. 97, 104 (1976)). Furthermore, "[t]he proper standard of materiality must reflect [the] overriding concern with the justice of finding guilt." <u>Agurs</u>, 427 U.S. at 112-113. While a defendant who has not had an opportunity to interview a witness may face a difficult task in making a showing of materiality, the task is not an impossible one. <u>Valenzuela</u>, 458 U.S. at 871. Although it may not be possible to attest to *how* a witness may testify, materiality may still be found in the events to which a witness may testify and their relevance with the crime charged. <u>Id.</u>

In the present case, de la Cruz alleges that Sánchez would not identify him as "El Rubio" and the person whom she paid for the voyage if she had been shown a photographic array. (Docket No. 139, ¶ 5). The present facts are clearly distinguishable from <u>Washington</u>, in which the Supreme Court overturned petitioner's conviction on the grounds that he was deprived of his Compulsory Process right when a state statute barred a co-participant ("Fuller") from testifying on the petitioner's

Case 3:07-cr-00521-ADC   Document 166   Filed 06/25/09   Page 8 of 9

United States v. Simeon de la Cruz-Paredes, et al.                                                Page 8
Cr. No. 07-521 (ADC/BJM)
REPORT AND RECOMMENDATION

behalf. Id. at 14-15. The Court reasoned that because Fuller was the *"only* person other than petitioner" who had knowledge of the events leading up to the charge, the petitioner could not be deprived of the witness's testimony to corroborate his own story. Id. at 16 (emphasis added). However, unlike Washington, the record here shows that at least eighteen other aliens were aboard the yawl, and that the defense concedes that one witness already did not identify de la Cruz as "El Rubio" when shown a photo array. (Docket No. 139, p. 1-2). Therefore, Sánchez's potential testimony would be "cumulative" to the extent that it is offered to show that she would not identify the defendant as "El Rubio" in a photo lineup. Valenzuela, 458 U.S. at 873 (defendant must make a plausible showing that the testimony of the deported witnesses would have been material "in ways not merely cumulative to the testimony of available witnesses").

De la Cruz also contends that Sánchez's testimony would at least establish that "there was another 'Rubio' in the Dominican Republic, not the defendant, who was involved in the alien smuggling business." (Docket No. 139, p. 3). Again, however, the record does not support this proffer since Sánchez stated that she did not see who was driving the yawl or assisting the captain and therefore could not state conclusively that the person she knew as El Rubio was not aboard the vessel.

Because the court recognizes that prompt deportation deprives the defendant of an opportunity to interview the witness to determine precisely what evidence he or she possessed, the defendant is not expected to render a detailed description of the lost testimony. See Valenzuela, 458 U.S. at 873. Nevertheless, it is the defendant's duty to make some showing of materiality. Id. For the reasons above, de la Cruz failed to meet this burden. In short, there is nothing in the record to indicate that the absence of Sánchez's testimony would prevent a fair trial since the testimony is

United States v. Simeon de la Cruz-Paredes, et al.                                                             Page 9
Cr. No. 07-521 (ADC/BJM)
REPORT AND RECOMMENDATION

neither favorable nor material to the defense. See Lisenba v. California, 314 U.S. 219, 236 (1941) ("the acts complained of must be of such quality as necessarily prevents a fair trial"), *cited in* Valenzuela, 458 U.S. at 872.

## CONCLUSION

For the foregoing reasons, I recommend that defendant's motion to dismiss the superseding indictment be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court within ten (10) business days. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. See Thomas v. Arn, 474 U.S. 140, 155 (1985); Davet v. Maccorone, 973 F.2d 22, 30-31 (1st Cir. 1992); Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985 (1st Cir. 1988); Borden v. Sec'y of Health & Human Servs., 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 25th day of June, 2009.

**S/Bruce J. McGiverin**
BRUCE J. McGIVERIN
United States Magistrate Judge